Oakdale Building Corporation et al., Appellants, v.
Smithereen Company, Appellee.

Gen. No. 42,810.

Heard in the second division of this court for the first district at the October term, 1943. Opinion filed March 8, 1944.

BERNARD W. VINISSKY and JULIUS S. NEALE, both of Chicago, for appellants.

W. HAROLD RUTHERFORD, of Chicago, for appellee; RICHARD E. KEOGH, of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Oakdale Building Corporation and the two individual plaintiffs brought suit for damages to real and personal property caused by a fire alleged to have been occasioned through the negligence of defendant. The jury returned verdicts in favor of the defendant against all the plaintiffs. Motions for judgment notwithstanding the verdicts and for a new trial were

overruled by the court and judgment was entered for defendant, from which plaintiffs appeal.

There is substantially no dispute as to the salient facts. The Oakdale Building Corporation owned the premises known as 1115–1127 Oakdale avenue, Chicago, Illinois, in which Frances M. Gillum and Lillian Price occupied apartments as tenants. An exterminator employed by defendant came to the premises about 8:45 a. m. on August 16, 1941. Mrs. Gillum and her son were visiting in Minneapolis and her husband, William Gillum, was home alone. He arose about 6:30 in the morning, prepared his breakfast, washed the dishes and left the apartment about 7:40 a. m. to play golf. On his way out he met the janitor, Julius Vermeire, on the back porch, and left the key to the apartment with him. The windows in the Gillum apartment were all shut except one in the living room, which was raised about a quarter of an inch. When the representative of the exterminating company arrived about 8:45 a. m. he obtained the key to the apartment from the janitor, entered and remained there about half an hour, returning the key to Vermeire at approximately 9:15 a. m. When he left the apartment the doors and windows were all closed. About 9:30 a. m. someone called the janitor to tell him there was a fire in the building. He went up the back stairs, unlocked the door of the Gillum apartment and entered it, at the same time that the firemen were chopping down the front door. No one was in the apartment at that time. The alarm was received by the fire department about 9:30 a. m. at a fire station a mile and three-quarters away. The firemen arrived at the apartment two or three minutes thereafter and found the fire burning ''pretty good.'' They broke the doors, windows and side walls and opened up approximately six feet of the roof. All told, they worked on the fire about an hour and forty minutes. After the fire had been extinguished, John M. Scanlan, the

battalion chief, who had served in the fire department for 38 years, checked the wiring and found it all right. He was of opinion that the fire had been burning about ten or fifteen minutes when the firemen arrived. Mr. Gillum testified that he did not smoke after breakfast that morning; that he smokes a pipe and had not smoked a cigarette in six years, and does not smoke cigars. He stated that about 1:00 or 2:00 o'clock that afternoon a young man from the Smithereen Company came to the apartment and told Gillum he had performed the extermination in his apartment. When asked how the fire could have happened, he replied, "I couldn't tell you, it might have been caused from a pilot light. It could have happened if everything was sealed up." Witnesses testified to the amount of the fire loss. No evidence was offered by defendant and the case went to the jury solely on the testimony adduced by plaintiffs.

On this state of the record the principal question presented is whether the doctrine of *res ipsa loquitur* is applicable. The complaint does not charge specific negligence and is framed upon the doctrine of *res ipsa loquitur*. The courts of this State have frequently had occasion to discuss and consider the doctrine. Its scope is briefly stated in *Bollenbach v. Bloomenthal,* 341 Ill. 539, as follows: "The doctrine of *res ipsa loquitur* is, that whenever a thing which produced an injury is shown to have been under the control and management of the defendant and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford *prima facie* evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care." The rule is similarly stated in 38 Am. Jur., sec. 295 at p. 989, and is supported in *O'Rourke v. Marshall Field & Co.,* 307 Ill. 197 and *Feldman v. Chicago Rys. Co.,* 289 Ill. 25, which

held that if there is nothing to explain or rebut the inference that arises from the way the occurrence took place, it may fairly be presumed to have been caused by the negligence of the defendant. In *Sweeney v. Erving,* 228 U. S. 233, the court defined the scope of the doctrine as follows: ''In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff.'' In *Bahr v. Lombard,* 53 N. J. L. 233, 21 Atl. 190, the reason for the adoption of the rule is stated as follows: ''The principle is quite institutional, that whenever a right of action springs from the conduct of a defendant, the plaintiff must present proof of the facts necessary to the recovery which he seeks. It is, furthermore, the general rule of law, that the mere proof of the occurrence of an accident raises no presumption of negligence. These doctrines, which, if strictly applied, would lead to a non-suit in every case in which the plaintiff's proof failed to demonstrate the specific act of negligence which he deemed the proximate cause of his injuries, have in practice an application which, while not losing sight of their normal character, leads to an intelligent adaptation in keeping with the requirements of the modern law of negligence. . . . Under these changed conditions, to compel plaintiffs in every case to ascribe some specific act as negligence, would be to make a recovery for in-

juries dependent upon the possession of a special technical knowledge, and to grant immunity to the users of dangerous agencies in proportion to the success with which the special element of danger was concealed from the public. From these considerations, it follows that the *quantum* of proof which a plaintiff must give in order to draw from the defendant explanatory evidence, must, with certain limits, be dependent upon the circumstances of each case—a rule which finds current expression in the phrase '*res ipsa loquitur.*' ''

We think the authorities warrant the conclusion that the doctrine of *res ipsa loquitur* applies to the circumstances of this proceeding. The Gillum apartment was in good condition when possession was given to defendant for the purpose of exterminating. For approximately one-half hour defendant's representative was in exclusive control of the apartment. The fire started shortly after he left. Defendant may have had some knowledge as to how the fire originated; if not, it was certainly incumbent upon it to offer evidence as to the nature of the work done in the Gillum apartment, the materials used, and what its representative did during the half hour that he had control of the apartment, to rebut or overcome, if it could, the circumstantial presumption of negligence. To allow defendant to escape liability by concealing such knowledge after plaintiffs had adduced all the evidence that they possibly could under the circumstances, would be a perversion of the rule upon which the doctrine is founded.

In support of the theory upon which plaintiffs tried their case and after defendant had failed to offer any evidence, plaintiffs tendered the following instruction which was refused: ''You are instructed that if you believe from the evidence and under the instructions of the court that the plaintiffs were in the exercise of due care and caution for the safety and preservation

of their property and premises, at and immediately before the fire in question, and if you find that the defendant, through its agent or servant, was in the exclusive possession and control of said premises at or just prior to the time of the commencement of the fire and if you further find that all other persons were absent from the apartment of the plaintiff, Frances M. Gillum, in question, and if you find that the occurrence of the fire was such an event as does not ordinarily occur if due care was used by the defendant in rendering exterminating service, then and in such case the law is that there arises a presumption of negligence on the part of the defendant.'' We think the instruction should have been given because it correctly states the rule that a presumption of negligence arises under the circumstances set forth in the instruction.

It is also urged that the court erred in giving defendant's instructions 2 and 5, governing the quantum and burden of proof. An instruction similar to No. 2 was criticized in *Cohen v. City of Chicago,* 197 Ill. App. 377, wherein the court said: ''Because the defendant put in no evidence, the jury were only to consider the case as made by the evidence of the plaintiff. There was no occasion for the court to instruct the jury regarding the preponderance of the evidence. . . . The jury were instructed that their verdict must rest upon a preponderance of the evidence and that if they found the defendant city guilty of the negligence charged against it in the declaration, their finding must be based upon a preponderance of the evidence. But as all the evidence before them was that of the plaintiff, the use of the word 'preponderance' in this condition of the record was unnecessary.''

Instruction No. 5 charged the jury that the burden was on plaintiffs to prove the specific negligence alleged in the complaint. Since no specific negligence was charged and plaintiffs predicated their case on the theory that the rule of *res ipsa loquitur* applied,

that instruction was misleading and may well have produced the verdict and judgment of which plaintiffs complain.

During the pendency of the cause plaintiffs moved to strike the additional abstract filed by defendant. The additional abstract is devoted entirely to counsel's closing arguments to the jury and deals with matters which are not contained in the record. It is not necessary for a decision of the issues, and the motion which was reserved to hearing is therefore allowed.

Holding as we do that the rule of *res ipsa loquitur* applies, it would seem to follow that the case should have been tried upon that theory and the jury instructed accordingly. The judgment of the circuit court is therefore reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded for a new trial.*

SCANLAN and SULLIVAN, JJ., concur.